## Case No. 12,059.

### In re ROSENFIELD.

[1 N. B. R. 319 (Quarto, 60); 15 Pittsb. Leg. J. 245; 1 Am. Law T. Rep. Bankr. 47.] [1]

District Court, D. New Jersey. 1868.

BANKRUPTCY—BUSINESS DONE AFTER FILING PETITION—EXAMINATION OF BANKRUPT— REFUSAL TO ANSWER.

1. A bankrupt cannot be examined as to property acquired or business done after the date of filing his petition in bankruptcy, provided he states that the same has no connection with, or reference to his estate or business prior to said date.

[Cited in Day v. Superior Court, 61 Cal. 492.]

2. The register has no power to decide on the competency, materiality, or relevancy of any question, and has, therefore, no power to exclude or overrule any question.

3. The bankrupt, under the advice of counsel, must take the risk of deciding whether he will answer or not.

4. If the creditor chooses, he can, upon said refusal, apply to the district judge, to punish

1 [Reprinted from 1 N. B. R. 319 (Quarto, 60), by permission. 1 Am. Law T. Rep. Bankr. 47, contains only a partial report.]

the party as for contempt of court, and upon said application, the said judge will decide whether or not the question is a proper one.

[In the matter of Isaac Rosenfield, Jr., a bankrupt.]

At the examination before the register, Thos. D. Hoxey, Esq., at Paterson, the following questions were asked: "Q. Have you any interest, direct or indirect, with any other business or concern in the city of New York, or elsewhere?

"A. None whatever that has not originated since my filing my petition in bankruptcy.

"Q. Does your answer mean to imply that since the filing of your petition in bankruptcy, you have acquired an interest, direct or indirect, in any business transactions whatsoever?

"A. Certainly, sir.

"Q. What is the nature and character of that interest, and whence does it arise?

"A. Buying and selling stocks and gold on account, and with friends who have supplied me with means, and others who have opened me a limited credit, all of which occurred since the filing of my petition in bankruptcy, and without any reference whatsoever to any connection or property of previous date.

"Q. With what firm, if any, are you at present connected, or are your transactions made by you, individually?"

Leon Abbett, Esq., attorney for bankrupt, objected to this question, and under his advice bankrupt refused to answer the same. Written briefs were submitted on the part of the bankrupt and his creditors, and the register held that the question was improper, and wrote the following opinion which was submitted to Judge FIELD, district judge of New Jersey.

By the Register:

In overruling the question, I was guided by, and but followed the decision of Judge Blatchford of the Southern district of New York, in the Case of Patterson [Case No. 10,-815], in bankruptcy, the effect of which clearly was, that only the property of the bankrupt at the time of filing his petition in bankruptcy, could pass to the assignee, and from the examination of the bankrupt act [of 1867 (14 Stat. 517)] upon the following points: The 26th section of the act gives the power to examine the bankrupt relative "to the disposal or condition of his property," to his trade and dealings with others, and his accounts concerning the same, and to all matters concerning his property and estate. By the words "his property and estate," I think, can only be included the property of the bankrupt in his possession and control at the time of filing his petition in bankruptcy. The question overruled succeeded a full and searching examination of the bankrupt, and the answer to the question preceding it fully disclaims any and all connection of his present property and business with his estate passing to the assignee at the time of filing his petition. This question was unnecessary

for any other purpose than that of holding the estate since filing his petition by the bankrupt. If the property of the bankrupt, after filing his petition, does not pass to the assignee of the bankrupt, then this question, asked for this purpose, was illegal, and could only lead to an idle protraction of his examination. It would uncover and lay open the private affairs of the bankrupt, in which the old creditors of the bankrupt could have no interest, without aiding in any way in impeaching the former testimony of the bankrupt, or adding to the estate of the bankrupt to be distributed among his creditors under the bankruptcy. Again, the 14th section of the act requires that the deed of assignment made by the register to the assignee of the bankrupt's estate, made, perhaps, months after the filing of the petition or adjudication of bankruptcy, shall relate back to the commencement of proceedings in bankruptcy, and vest the property of the bankrupt at the time in the assignee. Form No. 18, prescribed by the supreme court in pursuance of this section, sustains this view of the case. Again, the 34th section of the act only releases the bankrupt from all claims, liabilities, and demands which are or might have been proved against the estate of the bankrupt, while the 19th section of the act limits the proof of debts against him to all debts due and payable from the bankrupt at the time of adjudication of bankruptcy, and debts at that time contracted but not yet due, with rebate of interest for the unexpired time. In short, the 19th section prescribes that the bankrupt shall be released from only those debts that could be proved, that were owing or contracted at the time of adjudication of bankruptcy. If the law should admit of the construction claimed by counsel of the creditors, the law would be one of great injustice, as it would take all the estate of the bankrupt at the time of his discharge for only those creditors whose debts were contracted after that time, and whose credit to the bankrupt may have essentially made the estate to be distributed, from all participation in the distribution of that estate, and leave the bankrupt liable for all the debts by him contracted after the date of his adjudication. Such a law would be a misnomer, and could not be regarded as a law to establish a uniform system of bankruptcy in any true sense of such law.

The brief of counsel for the opposing creditors was submitted after the above was written, and is herewith inclosed. The same perhaps justifying this explanation for the more full information of the judge of the district court, namely, that previous to the question objected to, this bankrupt had been examined several days, and had, as the register thought, given unreserved answers to all questions touching the disposition of his estate up to the time of filing his petition in bankruptcy. The register, and all the counsel at the time, supposed the question over-ruled to have been asked with reference to the newly acquired property of the bankrupt, for the purpose of subjecting that estate to the present bankruptcy proceedings. As to whether the overruled question was asked for the purpose of establishing some connection with, or leading to the discovery of some connection of the present property of the bankrupt with, or as in some way attaching itself to, property owned by him previous to the commencement of these proceedings in bankruptcy, was not, at the time the question was asked, considered. In the opinion of the register this question was unwarrantable for any purpose, after the previous answer of the bankrupt, to the questions preceding it.

Leon Abbett, attorney for bankrupt.

Thos. N. M'Cartee and S. Stern, attorneys for creditors.

FIELD, District Judge. I am of opinion that the question propounded to the witness, and excluded by the register, was not a proper question to be put, for the reasons stated by the register in the foregoing, but am also of the opinion that under general order No. 10, the register had no power to decide on the competency, materiality, or relevancy of the question, and was therefore wrong in excluding it.

[For subsequent proceedings in this litigation, see Cases Nos. 12,058 and 12,057.]